UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CHARLES SELBY,

    Plaintiff,

v.                                                   Case No. 2:09-cv-152
                                                   HON. R. ALLAN EDGAR

PATRICIA CARUSO, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Charles Selby, an inmate currently confined at Marquette Branch Prison (MBP), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Michigan Department of Corrections (MDOC) defendants: Patricia Caruso, the Director of the MDOC, James MacMeekin and Jerri-Ann Sherry, the former and current Regional Prison Administrators with oversight of MBP, and Gerald Hofbauer, the warden of MBP. Plaintiff is serving a life sentence for first degree murder, a two year sentence for felony firearm, and a two to five year sentence for attempted prison escape.

Plaintiff's complaint alleges that he has been placed in administrative segregation since 1998 as punishment for repeated escape attempts, the most recent of which was in 2001. Plaintiff claims that defendants wrongfully kept him in indefinite administrative segregation for thirteen years. Plaintiff alleges that he "purchased" his release from administrative segregation by filing this lawsuit. Plaintiff claims he was released into the general population despite continuing to be a "high -profile escape risk." Plaintiff asserts that the review procedures are a sham and that

his placement in indefinite administrative segregation violated his due process rights. Plaintiff also alleged that his segregation burdened the exercise of his religious beliefs, in violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1. Plaintiff is suing defendants in both their individual and official capacities and is seeking compensatory and punitive damages, as well as declaratory relief. This court previously dismissed this case granting defendants' motion for summary judgment. The Sixth Circuit remanded this matter finding that it was an abuse of discretion to not allow plaintiff discovery before granting the motion for summary judgment. The parties have now engaged in discovery and this matter is set for trial.[1]

Defendants again move for summary judgment, pursuant to Fed. R. Civ. P. 56(b). Plaintiff has filed a response and the matter is ready for decision. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine

---

[1] In the MDOC, security classifications, from least to most secure, are: Levels I, II, IV, V and administrative segregation. Mich. Dep't of Corr., Policy Directive 05.01.130, ¶ B (effective Nov. 1, 2010). There are various types of segregation, including administrative segregation and detention. Administrative segregation is the most restrictive and is imposed for institutional security, e.g., when a prisoner poses a serious escape risk. MICH. DEP'T OF CORR., Policy Directive 04.05.120, ¶ L . Detention, or "punitive segregation" can be imposed as a sanction for committing a major misconduct, if ordered by the hearing officer. *Id.*, ¶ W. If possible, detention is served in a "designated detention cell" rather than in administrative segregation. *Id.* A prisoner may not remain on detention for a period longer than that ordered by the hearing officer. *Id.* The behavioral adjustment of a prisoner in segregation is reviewed periodically with the prisoner. *Id.*, ¶ GGG. Reclassification from administrative segregation occurs only with the approval of the Security Classification Committee. *Id.*, ¶ III. If the prisoner committed a serious assault, the approval of the Regional Prison Administrator is also required. *Id.*

issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants argue that, assuming plaintiff had a liberty interest in not being placed in administrative segregation for an extended period, he has been afforded the due process to which he is entitled. Further, defendants argue that plaintiff's religious beliefs are not substantially burdened by the restrictions placed on him, and that plaintiff's transfer to general population renders this claim moot. Finally, defendants claim that they are entitled to qualified immunity. Plaintiff argues that he had a liberty interest in being removed from administrative segregation and that due process was violated because the review procedures employed were simply a sham. Further, plaintiff asserts that he was released to general population only because he filed this lawsuit.

To determine whether segregation of an inmate from the general prison population involves the deprivation of a liberty interest protected by the Due Process Clause, the Court must

determine if the segregation imposes an "atypical and significant" hardship on the inmate "in relation to the ordinary incidents of prison life." *Jones v. Baker*, 155 F.3d 810, 811 (6th Cir. 1998) (quoting *Sandin v. Conner*, 515 U.S. 472, 483 (1995)). In *Harris v. Caruso*, 465 Fed. Appx 481 (6th Cir. 2012) the Sixth Circuit held that confinement in MDOC administrative segregation for a period of eight years constitutes an "atypical and significant" hardship implicating a liberty interest and due process concerns. However, the court held that bi-monthly reviews of the prisoner's confinement status provided by the MDOC satisfied due process concerns, and rejected plaintiff's claims that the review process was a sham. The court explained:

> The Supreme Court has indicated that "[p]rison officials must engage in some sort of periodic review of the confinement of such inmates [in administrative segregation]." *Hewitt v. Helms*, 459 U.S. 460, 477 n.9, 103 S.Ct. 864, 74 L. Ed. 2d 675 (1983)(abrogated on other grounds by *Sandin*, 515 U.S. at 484). "This review will not necessarily require that prison officials permit the submission of any additional evidence or statements." *Id*. However, the decision to continue confinement must be supported by "some evidence." *Superintendent v. Hill*, 472 U.S. 445, 454, 105 S. Ct. 2768, 86 L. Ed 2d 356 (1985). This requirement balances the procedural rights of [a] prisoner against the need of prison officials to have freedom to operate their facilities on a day-to-day basis. Under this law, Harris was entitled to a periodic review of his confinement, supported by some evidence or indicia of reliability.

*Id.* at 484-485.

In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily

follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in "life, liberty or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original).

Plaintiff is not challenging his initial placement in administrative segregation, which was the result of an attempted escape in 1998. At that time, plaintiff was provided notice and an opportunity to be heard. Plaintiff is challenging the procedures used to keep him in administrative segregation as a violation of due process. Policy Directive 04.05.120 (effective 6/29/2009) provides in relevant part:

> REVIEW OF SEGREGATION PLACEMENT
>
> HOUSING UNIT TEAM/SCC REVIEWS
>
> HHH. Housing unit team members and SCC shall regularly review the behavioral adjustment of each prisoner classified to administrative or protective segregation, including those prisoners also serving a detention sanction for misconduct. The reviews shall be conducted at least weekly, at intervals of no more than seven calendar days, during the first two months in segregation and at least every 30 calendar days thereafter until the prisoner is reclassified to general population status. SCC reviews shall include a personal interview with the prisoner; at least one interview each month shall be conducted out-of-cell unless the prisoner chooses not to participate in the review. If the prisoner chooses not to participate, the highest ranking SCC member shall personally visit the prisoner to encourage his/her participation.
>
> * * *
>
> WARDEN/RPA REVIEWS
>
> KKK. Confinement in administrative or punitive segregation for more than 30 consecutive days requires written approval of the Warden; for prisoners in administrative segregation, the Segregation Behavior Review form (CSJ-283) shall be used for this purpose. The

Warden shall ensure a copy of the completed Segregation Behavior Review form is forwarded to the appropriate RPA for review for each prisoner confined in administrative segregation for more than 60 consecutive days. The form shall continue to be forwarded each month until the prisoner is reclassified and released from administrative segregation.

LLL. Wardens shall personally interview each prisoner in their respective institutions who has been confined in administrative or punitive segregation for six continuous months. If the prisoner continues in administrative or punitive segregation beyond the first six month period, the Warden shall interview the prisoner every six months thereafter until the prisoner is released from administrative or punitive segregation. The interviews shall be conducted out-of-cell unless the prisoner chooses not to participate. If the prisoner chooses not to participate, the Warden shall personally visit the prisoner to encourage his/her participation. The interview, or the prisoner's non-participation, shall be documented on the Segregation Behavior Review form (CSJ-283).

MMM. RPAs shall personally interview each prisoner in their respective regions who has been confined in administrative segregation for twelve continuous months. If the prisoner continues in administrative segregation beyond the first twelve month period, the RPA shall interview the prisoner every twelve months thereafter until the prisoner is released from administrative segregation. The interviews shall be conducted out-of-cell unless the prisoner chooses not to participate. The interview, or the prisoner's non-participation, shall be documented on a Segregation Behavior Review form (CSJ-283).

### RELEASE FROM SEGREGATION

NNN. A prisoner shall be reclassified from administrative segregation only with the approval of SCC and the concurrence of the Warden or designee; however, a prisoner confined to administrative segregation as a result of an assault on staff resulting in serious physical injury to staff may be reclassified only with written approval of the Warden and the appropriate RPA. The CFA Deputy Director also may require written approval of the Warden, RPA, and/or the Deputy Director to reclassify a prisoner who poses a unique concern. Wardens shall use a Request for Approval to Reclassify from Administrative Segregation (CJS-283b) to obtain approval in such cases. If RPA approval is required and the RPA does not approve the Warden's request, the RPA shall personally interview the prisoner

> within six months after denial of the request.  This is in addition to any other interviews required by this policy.
>
> OOO. A decision to reclassify and release a prisoner from administrative segregation shall be based upon the following factors:
>
> 1. Review of the circumstances which necessitated segregation as well as any history of prior behavior which also required segregation;
>
> 2. Assessment of the prisoner's behavior and attitude while in segregation to determine if it is consistent with the behavior and attitude of prisoners in the general population;
>
> 3. Evaluation of the prisoner's potential to honor the trust implicit in less restrictive confinement;
>
> 4. Assessment of the prisoner's need for correctional mental health services, including additional treatment and medication and any need for placement in an in-patient psychiatric unit or in a Secure Status Outpatient Treatment Program, a Residential Treatment Program, or the Adaptive Skills Residential Program.

These procedures exceed what is constitutionally required to satisfy due process under *Hewitt* and *Harri*s.  In the opinion of the undersigned, the record shows that plaintiff received due process.[2]

Plaintiff was initially placed in administrative segregation for an attempted escape in 1998.  Plaintiff was convicted of attempted escape and received a prison term of two to five years.  On October 31, 1999, plaintiff actually escaped from the Huron Valley Correctional Facility and was apprehended five days later.  Plaintiff again escaped from custody on March 26, 2001, while he was being transported for medical treatment.  Plaintiff was quickly apprehended by police.  Plaintiff was found guilty of escape after an administrative hearing.  Plaintiff was transferred to MBP as a Level V

---

[2]Moreover, a review of the procedures employed by defendants prior to the effective date of this policy also exceeded what is constitutionally necessary to satisfy due process concerns.  See defendants exhibit O for documents supporting plaintiff's continued confinement in segregation.

prisoner and placed in MBP administrative segregation on June 26, 2001. Administrative segregation was an appropriate placement for plaintiff during this time period.

Defendants have attached as exhibits to their motion monthly Administrative Segregation Reports beginning July 5, 2001, through January 12, 2011. Although plaintiff argues that these reports were simply a sham to cover-up his indefinite placement in administrative segregation, plaintiff has not shown that the reports fail to qualify as "some evidence" for his continued placement in administrative segregation. Plaintiff's past escapes and attempts to escape were the reasons for plaintiff's continued confinement in administrative segregation.

On April 4, 2003, Patricia Caruso, Deputy Director of Correctional Facilities Administration, wrote a memorandum to Warden Hofbauer ordering that due to plaintiff's escape history, plaintiff's cell was to be searched weekly, plaintiff was to be moved every 60 days, and plaintiff was not to leave MBP grounds without first contacting the Deputy Director. (Exhibit O, page 579). By May 22, 2006, plaintiff received detailed monthly reviews by the Security Classification Committee which were approved by the Warden. Starting in April of 2008, plaintiff received regular Housing Unit Evaluations with Security Classification Committee Action recommendations, and regular reviews by the Security Classification Committee and the Warden. In the opinion of the undersigned, plaintiff received due process during his continued placement in administrative segregation. There exists no evidence to support plaintiff's claim that the procedures employed were a sham.

Plaintiff alleges that his freedom to exercise his religious beliefs has been "substantially burdened" by his placement in administrative segregation, in violation of the First Amendment and the RLUIPA, 42 U.S.C. § 2000cc-1, because his confinement in administrative

- 8 -

segregation prevented his participation in group worship services as commanded by his Christian beliefs. The RLUIPA states that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

While the phrase "substantial burden" is not defined in RLUIPA, courts have concluded that a burden is substantial where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Living Water Church of God v. Charter Township of Meridian*, 258 Fed. Appx. 729, 733-34 (6th Cir., Dec. 10, 2007) (citations omitted); *see also*, *Marshall v. Frank*, 2007 WL 1556872 at *5 (W.D. Wis., May 24, 2007) (quoting *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003)) (a substantial burden is one which renders religious exercise "effectively impracticable"); *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on religious exercise).

By the same token, a burden is less than "substantial" where it imposes merely an "inconvenience on religious exercise," *see, e.g., Konikov v. Orange County, Florida*, 410 F.3d 1317, 1323 (11th Cir. 2005), or does not "pressure the individual to violate his or her religious beliefs." *Living Water Church of God v. Charter Township of Meridian*, 258 Fed. Appx. at 734. Such

conclusions recognize that RLUIPA was not intended to create a cause of action in response to every decision which serves to inhibit or constrain religious exercise, as such would render meaningless the word "substantial." *See Civil Liberties for Urban Believers*, 342 F.3d at 761.

Plaintiff fails to allege facts demonstrating that group worship is central and fundamental to his sincerely held religious beliefs. Plaintiff states a legal conclusion that defendants' actions "substantially burden" the exercise of his religion, mirroring the language of § 2000cc-1, and that the inability to worship with other Christians has had an adverse impact on his mental health. However, plaintiff does not meet the substantial burden test, because he does not show how his inability to worship in a group setting represents substantial pressure to modify or violate his beliefs, as required by *Living Water*.

Defendants also aver that even if administrative segregation imposes a substantial burden on the exercise of plaintiff's religious beliefs, placement in administrative segregation is the least restrictive means of achieving a compelling governmental interest, as permitted by § 2000cc-1(a)(1) and (2). Defendants have shown a significant governmental interest in placing plaintiff in administrative segregation. Plaintiff has a history of escape attempts, some briefly successful, and is a convicted first-degree murderer. Plaintiff has also been charged with and found guilty of, pursuant to an administrative hearing, possession of dangerous contraband on two separate occasions. The safety and security of the prison system, as well as the protection of the general public, are legitimate and compelling governmental interests which are achieved by plaintiff's placement in administrative segregation. Defendants are entitled to summary judgment on plaintiff's First Amendment and RLUIPA claims.

Moreover, plaintiff is no longer confined in administrative segregation. In the opinion of the undersigned, plaintiff's RLUIPA claim should be dismissed because damages are unavailable

under the RLUIPA, and plaintiff's request for injunctive relief is now moot because of his transfer out of administrative segregation. Although the statute permits the recovery of "appropriate relief against a government," 42 U.S.C. § 2000cc-2(a), monetary damages are not available under RLUIPA. In *Sossamon v. Texas*, 131 S. Ct. 1651 (2011), the Supreme Court held that the RLUIPA did not abrogate sovereign immunity under the Eleventh Amendment. *See also Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) ("[T]he Eleventh Amendment bars plaintiff's claim for monetary relief under RLUIPA."), and *Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (damages under the RLUIPA are not available against defendants in either their individual or official capacities). Plaintiff was removed from administrative segregation in January 2011. In the opinion of the undersigned, plaintiff's request for injunctive relief is moot. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

Defendants alternatively move for qualified immunity from liability. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*. As previously discussed, because plaintiff cannot establish that his constitutional rights were violated, defendants are entitled to qualified immunity.

In summary, in the opinion of the undersigned, plaintiff has failed to sustain his burden of proof in response to defendants' motion for summary judgment. Accordingly, it is recommended that defendants' motion for summary judgment (Docket # 83) be granted and this case be dismissed in its entirety.[3]

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from

---

[3]To the extent that Plaintiff is suing the individual Defendants in their official capacities, such claims are barred by the Eleventh Amendment. *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) (claims against a state agency or an official in his/her official capacity are claims against the state, and are not claims against a "person" subject to Section 1983 liability); *Frederick v. Abramajtys*, No. 94-1935, 1995 WL 564321, **1 (6th Cir. Sept. 21, 1995) (unpublished).

proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

        NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

        /s/ Timothy P. Greeley
        TIMOTHY P. GREELEY
        UNITED STATES MAGISTRATE JUDGE

Dated:   August 16, 2012